Philip J. Layfield
c/o Maximum Legal Holdings, LLC
8 The Green
Suite 6426
Dover, Delaware 19901
Telephone: (302) 401-6804
phil@maximum.global

FILED
OCT 0 4 2018
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br>       v.<br>Layfield & Barrett, APC<br>       Debtor | Case No.: 2:17-bk-19448-NB<br>Chapter 11<br>Assigned to: Hon. Neil Bason<br>Adv. No.: 2:18-ap-01050-NB |
| RICHARD M. PACHULSKI, Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC,<br>       Plaintiff,<br>vs.<br>LAYFIELD V, LLC, a Delaware limited liability company and PHILIP LAYFIELD, an individual. | MOTION TO SET ASIDE DEFAULT<br><br>HEARING DATE: OCTOBER 24, 2018<br>HEARING TIME: 10:00 AM<br>COURTROOM: 1525 |

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE; RICHARD M. PACHULSKI, CHAPTER 11 TRUSTEE; AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

    Philip J. Layfield (hereinafter "Layfield" or "Creditor"), the single largest creditor of Layfield & Barrett, APC (the "Debtor" or "L&B"), and as former Manager of LAYFIELD V, LLC ("LV"), files this motion to set aside the Entry of Default and Default Judgment entered against PHILIP LAYFIELD AND LAYFIELD V, LLC (hereinafter "defendants:).

    This Motion is made pursuant to Fed. R. Bank. P. 7055, Fed. R. Civ. P. 55(c) and Fed. R.

1

1 Civ. P. 60(b).

2     The Motion will be based upon this Notice, Motion, Memorandum of Points and
3 Authorities, Declaration in Support, and the complete files and records of this action and
4 proceeding, and upon such oral and documentary evidence as may be presented herein, herewith
5 and at the hearing on this motion.

6

7 Date: <u>September 29, 2018</u>                          By:<u>/s/ Philip J. Layfield</u>

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND..................................................................................................4

    A. PACHULSKI AND AVEIS HAVE BEEN UNTRUTHFUL AND LYING TO A FEDERAL JUDGE, AS AVEIS HAS DONE SHOULD NOT BE TAKEN LIGHTLY.............................................................................................................................5

    B. PACHULSKI TIMED THIS FILING TO COINCIDE WITH LAYFIELD'S IMMINENT ARREST AND SHOULD NOT BENEFIT FROM HIS GAMESMANSHIP NOR SHOULD AVEIS' MISCONDUCT BE REWARDED............................................................................................................................6

    C. PACHULSKI INTENTIONALLY FAILED TO SERVE LAYFIELD AT THE MDCLA WITH THE SUMMONS AND COMPLAINT..........................................6

    D. PACHULSKI HAS IMPROPERLY STIPULATED WITH GOLDEN WHILE KNOWING A MOTION TO DISMISS IS PENDING AND KNOWING THAT GOLDEN IS LIKELY TO BE DISQUALIFIED............................................8

II. ARGUMENT.........................................................................................................................9

    E. LAYFIELD'S CONDUCT WAS NOT CULPABLE....................................................10

III. LAYFIELD HAS A MERITORIOUS DEFENSE..............................................................12

IV. PLAINTIFF WILL NOT SUFFER PREJUDICE IF ENTRY OF DEFAULT IS SET ASIDE.......................................................................................................................................13

V. CONCLUSION....................................................................................................................14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

During the week of February 20, 2018, it is undisputed that Pachulski and his lawyers were actively working with government investigators and Assistant United States Attorney Mark Aveis (hereinafter "AUSA Avies or Aveis or AUSA"). See Layfield Dec. ¶4. Pachulski knew that Aveis intended on obtaining a warrant for Layfield's arrest on February 23, 2018 and that Layfield would be arrested at the Newark Aiport on February 24, 2018. Pachulski and Aveis have conspired against Layfield to put false and misleading information in front of a grand jury for the sole purpose of securing an indictment based on a fictitious fraudulent scheme. See Layfield Dec. ¶ 6. In fact, Aveis was initially successful in obtaining an indictment against Layfield on March 9, 2018 based on a fabrication of evidence, misleading testimony and what will be proven to be a fraudulent scheme that is nothing more than the imagination of an AUSA who has lost his way and no longer respects the truth. See Layfield Dec. ¶ 7. In fact, the evidence is so overwhelming that Aveis has made up the scheme that he is becoming every desperate and angry. Aveis is so obsessed and angry at Layfield for no apparent reason that he constantly trolls all of Layfield's internet postings hoping to find something additional to charge him with. When Aveis learned that Layfield's lawyers were preparing a Motion to Dismiss the Indictment after reading about it on Layfield's Linked-in page or Twitter, Aveis immediately called Layfield's attorney and said they are now going to bring new charges. See Layfield Dec. ¶ 8. He reacts to everything in such a silly manner that it's almost comical and childlike. If you told Aveis I had murdered someone, he would immediately believe it and run to Judge Fitzgerald like chicken little. There was a bet on how Aveis would react to the posting about the motion to dismiss. Would he threaten new charges or attempt to revoke bond? He's left with nothing meritorious so he needs to dig deep into his bag of unethical tricks. The threat of new charges is Aveis' desperate attempt to cure his defective indictment. He knows there was never a scheme but he refuses to concede. He knows he's being mocked for being so gullible as to believe uncredible witnesses like Wakefield, Pagay, and others, this is career is now in jeapordy for bringing a frivolous indictment based on a scheme he concocted. His vindictiveness is so blatant that it's almost laughable if it weren't so dangerous.

How someone is allowed to wield the power that Avies is permitted is simply untenable? Aveis would be well advised to seek the counsel of other more level headed AUSA's that haven't lost their way with hatred and vitriol. He doesn't deserve the privilege of working for the Department of Justice and should suffer the same fate as Peter Strzok because they are both liars and both unfit for the job. The only difference is that Aveis has not yet been fully exposed-but he will be!

A. **PACHULSKI AND AVEIS HAVE BEEN UNTRUTHFUL AND LYING TO A FEDERAL JUDGE, AS AVEIS HAS DONE SHOULD NOT BE TAKEN LIGHTLY**

The evidence has also shown that Pachulski has been less than truthful with Aveis or simply that Aveis is unable to understand simple communications. Either way, the lies of Pachulski and Aveis caused Layfield to be detained without bond and right where they wanted him to make sure a fair fight could not occur. It is undisputed that Pachulski fired every single Layfield & Barrett ("L&B") client pursuant to the Client Transition Protocol filed on September 5, 2017. It is undisputed that Layfield provided Pachulski and his lawyers access to the L&B electronic case management system while the servers were in Costa Rica. It is undisputed that Layfield set up an FTP site so that Pachulski's lawyers could download and have unfettered access to L&B's case management system. It is undisputed that Layfield provided Pachulski with all L&B bank account numbers for pre-petition accounts and for the post-petition DIP accounts at Wells Fargo. In fact, an email was attached as an exhibit to the Motion to Terminate Pachulski in the L&B core bankruptcy case from Attorney Stella Havkin to Debra Grassgreen. Despite these facts that cannot be reasonably disputed, Aveis stood in front of Judge Fitzgerald in connection with Layfield Bail Review (after Layfield had been illegally detained for almost 6 months) and told Judge Fitzgerald the exact opposite in furtherance of the conspiracy to violate Layfield's civil rights and harm his family. This behavior in inexcusable.

Pachulski knew Aveis was making these statements and was not only complicit in aiding and abetting Aveis' false statements, but Pachulski provided the basis for Aveis making those false statements. The evidence will ultimately show that Pachulski conspired with Aveis to violate Layfield's civil rights in violation of 18 U.S.C. § 241 by making false statements to a federal judge

and magistrate as well as a grand jury for the sole purpose of preventing Layfield from getting bond. This is an outright attack on Layfield and his family and this court should not permit any further oppression of Layfield. It will be shown that Pachulski filed this complaint knowing that Layfield would be unable to defend himself and knowing that Pachulski could never succeed on the merits. This lawsuit is frivolous, malicious and designed to do nothing other than continue to paint Layfield in a negative light.

**B.  PACHULSKI TIMED THIS FILING TO COINCIDE WITH LAYFIELD'S IMMINENT ARREST AND SHOULD NOT BENEFIT FROM HIS GAMESMANSHIP NOR SHOULD AVEIS' MISCONDUCT BE REWARDED.**

A summons was issued in this matter on February 23, 2018. See Docket #3. Layfield was arrested and held without bond until August 1, 2018 in connection with one count of mail fraud in violation of 18 U.S.C. §1341 and two counts of Money Laundering. See Layfield Dec. ¶ 8. A reading of the four corners of the indictment allege a loss of approximately $2 million and the laundering of those proceeds in an amount of approximately $250,000. As an example of how malicious and vindictive this prosecution is, one only needs to compare Layfield's case to that of USA v. Elizabeth A Holmes Case No. 5:18-cr-00258. Holmes is charged with wire fraud, which is almost an identical statute to mail fraud. Holmes is charges with an alleged loss in excess of $700 million. Holmes' case is based in the Northern District of California and is ongoing. In that case, even though Holmes' fraud is alleged to be over 350 TIMES the amount of Layfield's, Holmes was immediately granted what's commonly referred to as a signature bond (with no assets pledged), no pretrial detention and no condition of release. However, Layfield, with the aid of Pachulski's and Wakefield's false statements has been made out to be a criminal even more dangerous than Pablo Escobar by Aveis. Aveis, Pachulski and his lawyers have attempted to oppress Layfield at all costs and deny him the opportunity to defend himself civilly or criminally. While Holmes has complete freedom, Layfield has been plaed on house arrest, a 24/7 GPS monitor and invasive supervision by pretrial services. Simply put, this is a continuing violation of Layfield's civil rights and is the direct result of this conspiracy. The level of vitriol, animosity and vindictiveness here is simply not

justified and defies logic when Layfield's alleged crimes are literally 1/350th of Holmes and Holmes has suffered nothing in comparison to Layfield. Eventually, someone will be forced to answer the question of how and why this occurred. Comparing these two cases of Layfield and Holmes, it becomes apparent just how outrageous the conduct of all parties involved has become. This is nothing short of a feeding frenzy and resembles something that might occur in a police state. This lawsuit, which is nothing more than a continuation of the conspiracy of Pachulski, Wakefield and Aveis must be heard on the merits and be allowed to be defeated for the sham that it is.

### C. PACHULSKI INTENTIONALLY FAILED TO SERVE LAYFIELD AT THE MDCLA WITH THE SUMMONS AND COMPLAINT

Pachulski claims to have mailed copies of the Summons and Complaint to every address except the one Pahculski knew Layfield was currently at. See Docket # 5. Despite the fact that Layfield was being housed in the Los Angeles Metropolitan Detention Center ("MDCLA"), which is curiously attached to this courthouse, Pachulski never sent the summons and complaint to Layfield where he was likely to receive it. See Layfield Dec. ¶¶ 9 & 10.

To make matters worse, what most people do not realize is that federal pretrial detainees are stripped of literally all rights and freedoms despite having been convicted of nothing. See Layfield Dec. ¶ 11. Pretrial detainees are prohibited from accessing the internet, prohibited from searching Pacer, prohibited from having access to any materials to defend against civil lawsuits and are prohibited from accessing their own personal files. To make matters worse, all conversations are monitored by the AUSA and all emails are illegally read by the AUSA even if they are privileged. During Layfield's period of incarceration, he requested written permission of the Warden of the MDCLA for permission to appear at civil proceedings and for permission to make un-monitored attorney phone calls. All of these requests were either denied or ignored. In fact, I was prevented from using email for 30 days, I was only allowed 300 minutes per month of monitored telephone calls (less than 10 minutes per day), the light in my cell was out for 17 straight days leaving me in the dark, and on many occasions, we were locked in cells for 24 hours at a time. During my period of incarceration I was literally bombarded by litigants with lawsuits, demands for arbitration and

other frivolous filings. I was unable to respond to anything due to my oppressive detention. See Layfield Declaration ¶ 12. I even attempted to set aside a default judgment entered against me.

During my period of incarceration, an opposition to that motion was filed by attorney Jeffrey Golden, who has engaged in what can only be described as blatant perjury by claiming that I was a liar and that it was laughable for me to claim that I was not in Marina del Rey, California on September 23, 2018. Judge Guilford was tricked by Golden's lies and denied my motion without hearing and while I was denied my right to participate in civil proceedings. Now that I've been released and filed a Motion for Reconsideration and provided exhaustive evidence to refute Golden's claims, he is attempting to thwart the hearing on the merits by claiming that I am unable to file any motions in any proceedings because he was successful in manipulating this court to impose an interim trustee based on his fraudulently obtained judgment and Pachulski's blatant lie about having an uncontested claim against me. This scenario is nothing short of the twilight zone. In order to bring order, the first step is allowing matters to be heard on the merits one step at a time.

### D. PACHULSKI HAS IMPROPERLY STIPULATED WITH GOLDEN WHILE KNOWING A MOTION TO DISMISS IS PENDING AND KNOWING THAT GOLDEN IS LIKELY TO BE DISQUALIFIED

On May 21, 2018 an Involuntary Bankruptcy Petition was filed against Layfield by Pachulski and Golden. See Layfield Dec. ¶13. On May 25, 2018 a Judgment in this matter was entered. See Docket #18. This judgment was entered in violation of the automatic stay. On August 27, 2018 Layfield filed a Suggestion of Bankruptcy and requested this court to set aside the judgment. See Docket # 22. Rather than let the matter be heard on the merits, Pachulski engaged in another overt act in furtherance of his conspiracy. Despite knowing that he has no basis to bring an Involuntary Petition against Layfield, Pachulski conspired with Golden to sign a Stipulation for Relief from Stay to fix their mistake. It is noteworthy that Golden signed the Stipulation as counsel for the Interim Trustee despite the fact that Golden's employment has not been approved and despite full knowledge that Golden has a unwaivable conflict. See Docket No. 40 in Case No. 2:18-bk-15829. This court has virtually allowed Golden and Pachulski to prevent Layfield from even defending himself by virtue of this legal fiction created by imposition of an interim trustee.

The proper course of action should be to stay any and all matters until Layfield's Motion to

1  Dismiss the Involuntary Petition can be heard. Instead, just like the criminal court took a guilty
2  until proven innocent approach to Layfield's case by incarcerating him without bond, this court is
3  allowing virtually the same thing to occur. This court has allowed the appointment of an interim
4  trustee without due process and Pachulski and Golden are trying to use this legal fiction to prevent
5  Layfield from defending himself or assserting his own claims. The strategy here is clear, give
6  Pachulski and Golden free reign over Layfield's affairs and oppress Layfield and force him to
7  prove that he has been wronged with no money, no resources, no counsel and no ability to control
8  his affairs. This is just plain wrong. I suspect that his court has simply become so comfortable
9  with these regular practitioners coming before this court that it seems unimaginable that such
10 misconduct could be occurring in plain site. Well, the unimaginable has occurred and all it takes is
11 a careful review of the record to see that Layfield is being truthful and the regular players have been
12 caught with their hands in the cookie jar. It's just that simple. The question is whether this court
13 has the courage and the desire to make sure that equity is done and that an injustice does not occur.
14 Whether this matter is resolved here, the 9th Circuit or ultimately at the Supreme Court, the bottom
15 line is that Layfield is not going away until he clears his name and until the law is followed and
16 those who have wronged him are brought to justice both civilly and criminally. We can simply
17 resolve this matter here at this time or continue to litigate up and down the various appellate courts.
18 It seems foolish however, since the law is clear. A resolution on the merits is always preferred.
19
20 **II.    ARGUMENT**

21      Fed. R. Civ. P. 55 applies to Adversarial Proceedings. (*Fed. R. Bankr. P.* 7055.) Fed. R.
22 Civ. P. 55(c) allows this Court to "set aside an entry of defaul ... in accordance with [Fed. R. Civ.
23 P. 60(b)] where "good cause" is shown. This Court has discretion to grant relief to "a party or it's
24 legal representative" and to set aside the entry of default if it finds the default was the result of
25 "mistake, inadvertance, surprise or excusable neglect." Setting aside the entry of default and
26 default judgment satisfies both the Court and the Parties' interest in deciding a case correctly based
27 on legal and factual merit which outweighs the corresponding interests in the finality of the entry of
28 default and judgment. (*Pena v. Seguros La Comerical,* 770 F.2d 811, 814 (9th Cir. 1985).

1    Though this Court has discretion when applying these rules, as a general matter, Fed. R.
2    Civ. P. 60(b) is "remedial in nature" and "must be liberally applied." (*Falk v. Allen*, 739 F.2d 461,
3    463 (10th Cir. 1984). When applying Fed. R. Civ. P. 60(b), specifically to entry of default and
4    default judgments, "a case should, whenever possible, be decided on the merits" because entry of
5    default and default judgments are only "appropriate" in "extreme circumstances." *Id.* The finality
6    achieved through entry of default should readily give way to the competing interests in reaching the
7    actual merits of the lawsuit. (*TCI Group Life Insurance Plan v. Knoeber*, 244 F.3d 691, 696 (9th
8    Cir. 2001.) This case, the related civil and bankruptcy cases as well as the criminal matter have
9    become nothing short of a circus as a result of the misconduct that has occurred with respect to
10   Pachulski, Golden, and Aveis. This Court must not allow a fraud judgment to be entered against
11   Layfield because Aveis, Pachulski and Golden will attempt to use this as a pretext to further
12   persecute Layfield. This Court must allow Layfield to defend himself on the merits.
13   Fed. R. Civ. P. 55(c) places "good cause" standard over the Fed. R. Civ. P. 60(b) reasons for
14   setting aside an entry of default based on: (1) whether the defendant's culpable conduct led to the
15   default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the entry
16   of default would prejudice plaintiff.
17
18   **E.    LAYFIELD'S CONDUCT WAS NOT CULPABLE**
19   The analysis of "culpability" for the purpose of demonstrating "good cause" under Rule
20   55(c) overlaps with the standard of "excusable neglect" under Rule 60(b)(1). The failure to respond
21   is excusable if the defaulting party offers a credible, good faith explanation for the delay that
22   negates "any intention to take advantage of the opposing party, interfere with the judicial decision-
23   making, or otherwise manipulate the legal process." (*TCI Group Life Insurance Plan v. Knoebber*,
24   244 F.3d 691, 697-98). Further, the Court may consider a defendant's exigent personal matters, his
25   mental or physical state, or any other matter that indicates the defendants failure to timely respond
26   was not the result of bad faith. (*Id.* at 699.)
27   Here, Layfield was residing in Costa Rica with his wife and child. They had relocated to
28   Costa Rica temporarily to oversee the opening of a back office call center to support the operations

1   of L&B as well as Maximum Legal, LLC ("ML"). Layfield had previously opened a similar back
2   office operation in Bangalore, India that ultimately grew to almost 300 employees to support L&B.
3   Ultimately due to lack of qualified management and oversight, the operation failed. Layfield knew
4   it was critical that he oversee the initial set up of the operation. Unfortunately, that operation never
5   got off the ground as a result of the complete implosion of L&B and the fraudulent bankruptcy filed
6   by Wakefield in the Maximum Legal (California), LLP ("MLC") bankruptcy, which is the subject
7   of a separate motion to dismiss. Layfield utilized almost all of his personal funds in order to try to
8   keep the Cost Rican operation afloat. See Layfield Dec. ¶ 14. At a time when Layfield was
9   virtually out of cash and under immense debt pressures, he was arrested in Newark, New Jersey on
10  February 24, 2018 on his way back to Costa Rica. Layfield was held in a basement and was not
11  even permitted a phone call to alert anybody as to what was going on. For approximately 3 days
12  Layfield's family was put through hell. His wife and daughter were in a foreign country, their
13  husband and father was missing and nobody had answers. Layfield's wife even filed a missing
14  person's report with the FBI and they intentionally did not tell Layfield's wife that it was the US
15  government that was holding Layfield.
16      At the time of Layfield's arrest, Layfield was in the process of turning his business
17  prospects around. Layfield had recently signed engagements to generate approximately $1.4
18  million of fees between February 2018 and June of 2018. See Layfield Dec. ¶ 15. Layfield was
19  expecting a large payment the first week of March in connection with those engagements. After
20  Layfield's arrest, his family was literally cut off from all cash flow and unable to support
21  themselves. They immediately returned to the U.S. to try and understand what was happening.
22  They had to leave all of their personal belongings in Costa Rica except for the bags they were able
23  to bring with them on an airplane. They returned to the United States on March 1. They tasked
24  some friends and employees to help sell their personal items to pay salaries owed to employees and
25  other expenses. In their absence, the business was looted by ex-employees and their personal goods
26  were looted. The landlord at Layfield's home in Santa Ana locked the residence and has taken
27  possession of the majority of Layfield's belongings. Layfield's wife and daughter were homeles
28  with no money and their husband and father in jail. They came to California and stayed with his

1  wife's sister and slept on the floor for almost 2 months. They had no car, no money, no source of
2  income and were virtually wiped out. This was all occurring while the U.S. government and
3  Pachulski continued to perpetrate a fraud by telling the Courts and others that Layfield had stolen
4  $11 million and fled to Costa Rica. See Layfield Dec. Layfield's wife even had to sell their
5  beloved family dog to a friend to generate cash. See Layfield Dec. ¶ 16.
6        During this time, Layfield was held in a New Jersey County Jail, was transported to the
7  Federal Transfer Center in Oklahoma City and ultimately delivered in leg irons, body chains and
8  handcuffs to the MDCLA on March 23, 2018 as though he were as dangerous as Hannibal Lecter
9  while Holmes was free on a signature bond. Clearly something is wrong with this process.. See
10 Layfield Dec. Six days after Layfield arrived at the MDCLA, a Request for Entry of Default was
11 filed. In summary, Layfield's entire life was in disarray and virtually destroyed by the actions of
12 the government, Pachulski and Golden. While Layfield was trying to figure out how this nightmare
13 could have happened, Pachulski was marching into and out of court trying to further bury Layfield
14 for no other purpose other than to inflict harm. In fact, the evidence will show that these properties
15 that Pachulski insisted on wasting valuable estate assets on unnecessary litigation, had virtually no
16 value due to the pending foreclosure. This matter could have simply been handled by allowing
17 Wells Fargo to foreclose on the assets against Layfield V, LLC without the need for unnecessary
18 and oppressive litigation tactics.
19       On May 1, 2018 Pachulski filed a Request for Default Judgment. See Docket #12. During
20 this time Pachulski and his co-conspirators relished in Layfield's misfortune and took every
21 opportunity to paint Layfield in a bad light. This was all occurring while Pachulski knew that
22 Layfield had not stolen any money and while knowing that Layfield had done everything
23 imaginable to save L&B and get all creditors paid as opposed to misappropriating assets. Even
24 more despicable is the fact that L&B had signed a lease with Layfield V, LLC for the subject
25 properties and L&B had failed to pay rent for over one year. Not only did Pachulski fail to file a
26 Motion to Reject the executory contract (i.e., the lease), but he attempted to pretend as though it
27 didn't exist. L&B's failure to pay the rent caused the properties to fall into foreclosure as a result
28 of Pachulski's negligence. It should be noted that Pachulski had no problem filing motions to pay

himself in excess of $600,000 during this same time period.

Pachulski knew that Layfield was in a serious personnel situation and knew that Layfield had not received the summons and complaint. Despite that knowledge, Pachulski continued to obtain default judgments for no reason other than to continue harming Layfield because he felt that he could. Remember, that Pachulski has engaged no professionals, has no forensic accounting to show that Layfield took any money he wasn't entitled to take pursuant to Layfield's employment contract, yet Pachulski decideed to take a hit out on Layfield through his vexatious bankruptcy positions. This should not be permitted.

### III. LAYFIELD HAS A MERITORIOUS DEFENSE

A defense is considered meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default" (*Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).) All that is required is an assertion of "a factual or legal basis that is sufficient to raise a particular defense; the question of whether a particular factual allegation is true is resolved at a later stage." (*Audio Toys, Inc. v. Smart AV Pty Ltd.*, 2007 U.S. Dist. (N.D. Cal June 6, 2007).) Attached herewith is Defendants' proposed answer which include factual admissions and denials. It should be noted here that everyone is aware that Layfield V, LLC has only one asset (the Park City properties), Layfield V is unable to defend itself in pro per. Everyone knows that Layfield is currently suspended from the practice of law pursuant to a default entered against him in January. Layfield attempted to set aside that default while incarcerated and the State Bar rejected Layfield's filing and served the rejection to Layfield's last known State Bar address, which he never received. See Layfield Declaration ¶ 17. Therefore, Layfield is unable to represent Layfield V, LLC in this proceeding. To cure this obstacle, Layfield has dissolved Layfield V, LLC in the State of Delaware. See Layfield Dec. ¶ 3 Exhibit 1. Now that Layfield V, LLC is dissolved, all proceedings and actions must proceed against Layfield in his individual capacity, and thus the proposed answer contemplates only proceeding against Layfield.

If Layfield prevails on the disputed factual matters or legal defenses, the outcome would be contrary to the result achieved by default. Therefore, Layfield has set forth a meritorious defense

that satisfies the second good cause factor.

### IV. PLAINTIFF WILL NOT SUFFER PREJUDICE IF ENTRY OF DEFAULT IS SET ASIDE

Prejudice is determined by whether a party will be hindered in pursuing its claim. (*TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 701.) The fact that a party may be denied a quick victory is not sufficient to deny relief from default judgment. (*Bateman v. United States Postal Service*, 231 F.3d 1220, 1225 (9th Cir. 2000).) "The delay must result in tangible harm such as loss of evidence, increased difficulties of recovery, or greater opportunity for fraud or collusion." (*Audio Toys*, 2007 supra.).

Allowing the case to move forward on the merits after only a short delay should not prejudice Plaintiff's ability to litigate this case. The only prejudice that might result to Plaintiff by setting aside the default and denying Plaintiff a default judgment is that Plaintiff will not be able to ensure an easy victory and provide additional misleading ammunition to Aveis in order to mislead Judge Fitzgerald and/or a jury in the future. Aveis has proven himself to be a liar and will clearly attempt to use this default in some improper fashion as he has used the state bar default (which he failed to disclose that Layfield sought bar counsel under his indemnification rights from Pachulski, which were ignored), as he has done with the myth about $11 million being stolen, as he has with the myth about wiping the servers and among other things, the myth that Layfield was going to hire a $200 hitman to off witnesses. This outrageous behavior and highly unethical conduct by Aveis and Pachulski to paint Layfield in such a negative light should not be aided by this court in allowing this ridiculous default to stand.

Layfield is ready and willing to litigate this lawsuit. Layfield has prepared an Answer to Plaintiff's Complaint and a true and correct copy is attached herewith as Exhibit 2. A two hour deposition of Pachulski in this matter will be lights out for Pachulski's case. Layfield will literally destroy Pachulski's false assertions through methodical questioning under oath and expose him for the liar that he is. A malicious prosecution case will follow and Pachulski knows it. That is why you will see him fight so hard to prevent a determination on the merits. Pachulski knows that he is

1  going to be exposed by Layfield just like Golden knows he is being exposed in the Advocate

2  Capital matter. Layfield's delay in responding was not culpable. Layfield's delay in responding

3  was not culpable, Layfield has meritorious defenses, and Plaintiff will not suffer any prejudice in

4  pursuing its claims if the default is set aside. Therefore, Layfield has met the good cause standard

5  of Rule 55(c) and this court should set aside the entry of default againts both Layfield and Layfield

6  V, LLC and allow the matter to proceed against Layfield as the successor-in-interest to the

7  dissolved Layfield V, LLC.

8

9  V.    **CONCLUSION**

10    Based on the foregoing reasons, this Court should grant Layfield's motion to set aside the

11  entry of default, the default judgment and any pending motions related thereto.

12

13  Dated: September 29, 2018                    */s / Philip J. Layfield*
                                                  Philip Layfield in Pro Per and as Manager of
14                                                and Successor-in-Interest to Layfield V, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled (*specify*): <u>Motion to Set Aside Default</u>

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>09/29/2018</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jeffrey Golden: jgolden@wgllp.com
Malhar S. Pagay: mpagay@pszjlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>09/29/2018</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| <u>09/29/2018</u> | <u>Philip Layfield</u> | <u>/s/ Philip Layfield</u> |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          **F 9013-3.1.PROOF.SERVICE**